# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 00-8041-CIV-RYSKAMP/VITUNAC

PINES PROPERTIES, INC.,
a Florida corporation,

        Plaintiff/Counterdefendant,

vs.

AMERICAN MARINE BANK,
a Washington corporation,

        Defendant/Counterplaintiff.

_____/



## AMERICAN MARINE BANK, INC.'S MOTION FOR ENTRY OF FINAL JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

Defendant/Counterplaintiff, American Marine Bank ("American Marine") moves pursuant to Rule 54 and any other applicable rules of the Federal Rules of Civil Procedure for the entry of a final judgment in the principal amount of $1,979,737.70, plus prejudgment interest at 12% per annum pursuant to Wash. Rev. Code § 19.52.010, for a total judgment in the amount of $3,023,659.78 as of March 12, 2004, with $650.74 in interest accruing each day thereafter until the Court renders a final judgment. American Marine further requests that post-judgment interest accrue at the rate provided by 28 U.S.C. § 1961(a), and that the Court award American Marine its costs in this action. The grounds for this Motion are set forth below.

### I.        INTRODUCTION AND PROCEDURAL HISTORY

This action arises out of a $2 million credit facility granted by American Marine to Eurowest Trading, LLC, which is not a party to this litigation. Pines Properties, Inc. ("Pines") signed three Pledge Agreements pledging a New York City, North Carolina, and Detroit Michigan bond (respectively) as collateral for the credit facility (the "First," "Second," and



"Third" Pledge Agreements). In December of 1999, Eurowest Trading, LLC defaulted on its $2 million loan. American Marine requested that Pines turn over the bonds or their liquidated values, but Pines declined to do so.

On January 26, 2001, American Marine filed a Motion for Summary Judgment on its claims for breach of the Pledge Agreements (D.E. 163). In its Motion, American Marine requested that the Court award prejudgment interest on the principal amount of the judgment under Washington State's statutory prejudgment interest rate of 12% per annum, citing Wash. Rev. Code § 19.25.010. See Motion for Summary Judgment at 1, n.1.

On March 30, 2001, the Court entered an Order granting American Marine's Motion for Summary Judgment, finding that Pines had breach all three Pledge Agreements (D.E. 234). On March 30, 2001, the Court entered a final summary judgment (D.E. 235). The Court ordered and adjudged that Pines was liable to American Marine in the principal amount of $1,979,737.70. The Court also found that American Marine was entitled to prejudgment interest in the amount it requested -- 12% per annum under Washington law, or $650.74 per diem.

On April 10, 2001, Pines took a plenary appeal of the final judgment (Case No. 01-1200-66). Pines did not challenge every finding made by the Court, arguing mainly that the term "credit facility" was ambiguous as used in the March Pledge Agreement and that there was a question of fact regarding whether the New York bond remained pledged as collateral for all Eurowest Trading, LLC debt. Pines did not challenge the Court's calculation of damages or the Court's award of prejudgment interest under Washington's statutory interest rate.

On September 5, 2002, the Eleventh Circuit Court of Appeals issued an opinion affirming in part and reversing in part the Order granting Summary Judgment for American Marine. The appellate court held that the term credit facility was ambiguous as used in the First Pledge

Agreement, and remanded the case for a trial on two discrete issues: resolution of the ambiguity in the First Pledge Agreement and the application of Pines' affirmative defense of material modification. The Eleventh Circuit did not address the issue of prejudgment interest, let alone reverse this Court's use of Washington's statutory interest rate. A copy of the Eleventh Circuit's opinion is attached as Exhibit "A".

The issue of Pines liability under the First Pledge Agreement was tried to a jury.[1]  On February 26, 2004, the jury found that Pines was liable under the First Pledge Agreement and it rendered a verdict in favor of American Marine. Pines' liability under all three Pledge Agreements is now settled.

On March 2, 2004, counsel for American Marine sent Daniel Blonsky, counsel for Pines, a proposed Final Judgment to be agreed upon by the parties. A copy of the March 2, 2004, letter, with attachments, is attached as Exhibit "B." American Marine hoped to obtain an agreed final judgment based on the fact the parties had stipulated to the value of the bonds for purposes of damages and that the Court had long since decided, without challenge, that American Marine was entitled to prejudgment interest at a rate of 12% per annum.

On March 4, 2004, Mr. Blonsky sent American Marine's counsel a letter stating that Pines agreed to the principal amount of the final judgment. However, Pines would not agree to the use of Washington's prejudgment interest rate. A copy of Mr. Blonsky's letter is attached as Exhibit "C." It is apparently Pines' "position that Florida's choice of law principles compel the application of Florida's prejudgment interest rate." See Ex. B. Mr. Blonsky suggested that

---

[1]      On November 14, 2003, the Court entered an Order Granting American Marine's Motion in Limine to Limit Issues to Be Tried (D.E. 424). The Court ruled that Pines' liability under the Second and Third Pledge Agreements was settled and not within the scope of the Eleventh's Circuit's mandate.

American Marine file a motion for entry of final judgment to resolve the matter. American Marine filed this Motion as a result.

## II. ARGUMENT

Although Pines' challenge to the application of Washington's prejudgment interest rate is disingenuous, it is not surprising. Pines has shown throughout this protracted litigation that it will to try to relitigate issues long since decided or abandoned, and that it will use the appellate court's limited remand for that purpose. Such is the case here. Pines' position that Florida's prejudgment interest rate -- not Washington's -- is without merit. The Court has already determined that American Marine is entitled to prejudgment interest under Washington law, and Pines has waived any argument to the contrary. Moreover, even if the Court were to reconsider the issue of prejudgment interest, the Court should apply Washington's interest rate under Florida's choice of law rules and pursuant to the Eleventh Circuit's appellate opinion.

American Marine has prevailed at trial and obtained a jury verdict in its favor. This litigation must come to an end despite Pines' continued attempts to frustrate American Marine's collection of a debt due and owning.

### A.    The Court Has Already Determined That Prejudgment Interest Should Accrue As Provided By Washington Law

This Court has already made a substantive determination that American Marine is entitled to prejudgment interest at the statutory rate provided under Washington law. In its Motion for Summary Judgment, American Marine specifically sought an award of prejudgment interest at a per annum rate of 12%, and in a corresponding per diem amount of $650.74, pursuant to Wash. Rev. Code § 19.52.010. (See Motion for Summary Judgment at 1, n.1.) American Marine noted that this was the proper result under Florida's choice of law rules. See also Part II.B, infra. Pines did not object on summary judgment. The Court agreed with American Marine when it

entered a final judgment and determined that American Marine is entitled to prejudgment interest in the per diem amount of $650.74.

Pines took a plenary appeal of the final summary judgment and the order granting summary judgment. But Pines failed to challenge the Court's determination that American Marine is entitled to prejudgment interest under Washington law.[2]  The Court's prejudgment interest determination was a necessary part of its final summary judgment, and the Court cannot revisit the issue of prejudgment interest on remand. See Toronzo v. Biomet, Inc., 236 F.3d 1342, 1348 (Fed. Cir. 2001) (noting that where an issue is within the scope of a district court's judgment but is not challenged on appeal, the issue is necessarily incorporated into the court of appeals' mandate and is therefore foreclosed from consideration on remand); see also Eason v. Thaler, 73 F.3d 1322, 1329 (5th Cir. 1996) (holding that the district court exceeded the scope of remand when it addressed an issue abandoned on appeal); Harman v. Duffy, 158 F.R.D. 525, 547 (D.D.C. 1994) (holding that a party cannot raise on remand an issue that it failed to raise on appeal).

Moreover, as this Court has already determined, the Eleventh Circuit remanded for consideration of only "two aspects of the case": resolving the ambiguity in the First Pledge Agreement and determining whether Pines' defense of material modification applied.  Under the doctrine of the law of the case, the Court is not free do deviate from the limited scope of the limited remand to permit Pines to relitigate the issue of prejudgment interest. See Barber v. Int'l Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, & Helper, Dist. Lodge #57, 841 F.2d 1067, 1071-73 (11th Cir. 1988) (holding that the district court's decision to admit evidence regarding issues not specifically remanded for trial violated the mandate rule and was

---

[2]    Pines' appellate briefs are attached as Exhibits "A" and "B" to Pines' December 2, 2003, Notice of Filing Copies of Appellant's Original Briefs filed with the Eleventh Circuit (D.E. 433).

contrary to the law of the case); <u>Baumer v. United States</u>, 685 F.2d 1318, 1320-21 (11th Cir.

1982) (holding that the district court violated the scope of the appellate court's mandate when it

permitted the defendant to relitigate an issue not address in the mandate).

**B.    Washington's Interest Rate Applies
        Under Florida Choice Of Law Principals**

Even if the Court were to reconsider the issue of prejudgment interest, Washington law

would apply.  A district court sitting in diversity must apply Florida's choice of law rules.  <u>See</u>

<u>Fioretti v. Mass. General Life Ins. Co.</u>, 53 F.3d 1228, 1235 (11th Cir. 1995).  Florida adheres to

the doctrine of "lex loci contractus," which provides that matters regarding contract

interpretation are governed by the place where the contract is made; <u>matters regarding</u>

<u>performance</u> are governed by the place of performance.  <u>See id.</u> at 1235; <u>Hammet v. Am.</u>

<u>Bankers Ins. Co.</u>, 203 F.R.D. 690, 701 (S.D. Fla. Bankr. 2001); <u>In re Santos</u>, 648 So. 2d 277, 280

(Fla. 4th DCA 1995).

According to section 418 of the Restatement (First) of Conflict of Laws,[3] "the rate of

interest allowed as part of the damages for the breach of a contact is determined by the law of the

place of performance."  Assuming that the Pledge Agreements were made in Florida, Pines'

performance nonetheless was to occur in Washington by delivering the bonds or their liquidated

value of the bonds to American Marine in Washington upon Eurowest Trading, LLC's default.

In other words, although interpretation of the First Pledge Agreement was a necessary step along

the way, this suit ultimately involves Pines' failure to perform under the Pledge Agreements.

Pines owes American Marine damages because it failed to perform its obligations under the

---

[3]    The Restatement (First) embodies the principal of lex loci contractus applied in Florida.
<u>See</u> <u>Wisc. Mortgage Assur. Corp. v. HMC Mortgage Corp.</u>, 712 F. Supp. 878, 880 (D. Utah
1989) ("The rule of lex loci contractus was adopted in the first Restatement of the Conflict of
Laws.").

Pledge Agreements, and Washington's prejudgment interest rate applies. See Burlington

Northern and Santa Fe Railway Co. v. Kans. City Southern Railway Co., 73 F. Supp. 2d 1274

(D. Kans. 1999) (holding that prejudgment interest, as an element of damages, is governed by the

law of the state where the contract is to be performed); cf. Hammet, 203 F.R.D. at 701 (noting

that matters concerning performance are governed by the place of performance).

American Marine anticipates that Pines will argue that, under lex loci contractus, Florida

law applies to the interpretation of the Pledge Agreements and, therefore,  applies to determine

the applicable rate of prejudgment interest.  This argument ignores the proper application of

Florida's choice of law rules, which contemplates that any given case can be decided under two

separate bodies of substantive state law.  See supra.

Moreover, American Marine is still entitled to prejudgment interest under Washington

law even if Pines were correct.  In footnote 10 of its opinion, the Eleventh Circuit ruled that "[a]s

the district court correctly pointed out in its [summary judgment] order, Washington law controls

the question of whether or not Pines was a surety or guarantor." (Emphasis added.)  As the

district court noted at page 16, footnote 9 of its Order granting summary judgment, "[t]his

determination necessarily requires interpretation of the New York Pledge Agreement. . . ."

(Emphasis added.)  In other words, the Eleventh Circuit has determined that Washington law

applies to matters of contract interpretation, and this is the law of the case.  Pines successfully

argued on appeal that it was entitled to assert suretyship defenses as a matter of Washington law.

(See Appellate Opinion at  22-25, citing Thompson v. Metropolitan Bldg. Co., 164 P. 222

(Wash. 1917)).  Pines relied heavily on the Thompson case during the charge conference at trial.

Having lost at trial, Pines cannot now be heard to complain about the application of

Washington's statutory interest rate.

### C.      Computation Of The Final Judgment

The principal amount of the final judgment is for $1,979,377.70.   This figure is based on

the amount previously awarded by the Court on summary judgment and stipulated to the by

Pines at trial and in its recent letter of March 4, 2004.   (See Ex. C).   This amount is based on the

following bond values on the following dates:

| | | |
|---|---|---|
| 1. | New York City Bond (sold portion) as of 8/26/99: | $1,058,102.10 |
| 2. | New York City Bond (unsold portion) as of 1/19/00: | $ 255,790.60 |
| 3. | North Carolina Bond as of 12/9/99 (sale date): | $ 457,665.00 |
| 4. | Detroit, Michigan Bond as of 12/9/99 (sale date): | $ 208,180.00 |

As of March 12, 2004, prejudgment interest of $1,037,814.68 has accrued on these

amounts under Wash. Rev. Code § 19.52.010.   Thus, the total amount of the judgment as of

March 12, 2004, is $3,023,659.78.   Prejudgment interest should accrue thereafter at $650.74 per

day until the Court renders a final judgment.

A proposed final judgment is attached as Exhibit "D."   The amount of prejudgment

interest owed and the total amount of the final judgment have been left blank, and American

Marine requests that the Court provided the appropriate figures on the date that the final

judgment is actually entered.

### III. CONCLUSION

For the forgoing reasons, American Marine Bank requests that the Court enter an Order

granting its Motion for Entry of Final Judgment and render a Final Judgment in favor of

American Marine and against Pines in the form attached as Exhibit D hereto.

Respectfully submitted,

Michael T. Kranz, Esq.
JONES FOSTER JOHNSTON & STUBBS, P.A.
Co-counsel for American Marine Bank
505 South Flagler Drive
West Palm Beach, FL 33401
(561) 659-3000 (Telephone)
(561) 650-0412 (Facsimile)

Joseph G. Galardi, Esq.
STEEL HECTOR & DAVIS LLP
Co-counsel for American Marine Bank
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
561.650.7202 (Telephone)
561.655.1509 (Facsimile)

By: _____
     Michael T. Kranz
     Florida Bar No. 351180
     Joseph G. Galardi
     Florida Bar No. 180572

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed on this

10th day of March, 2004, to:

Rudolph Aragon, Esq.
Daniel Blonsky, Esq.
Aragon, Burlington, Weil & Crockett, P.A.
2699 S. Bayshore Drive, Penthouse
Miami, FL 33133

_____
Joseph G. Galardi

**EXHIBIT A**

# CORRECTED

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---

> **FILED**
> U.S. COURT OF APPEALS
> **ELEVENTH CIRCUIT**
> September 5, 2002
> **THOMAS K. KAHN**
> **CLERK**

No. 02-14541

---

D.C. Docket No. 00-08041-CV-KLR

PINES PROPERTIES, INC., a
Florida Corporation,

Plaintiff-Counter
Defendant-Appellant,

versus

AMERICAN MARINE BANK,
a Washington Corporation,

Defendant-Counter
Claimant-Third-Party
Plaintiff-Appellee

FIRST MIAMI SECURITIES, INC.,
a Florida corporation,

Third-Party Defendant.

---

Appeal from the United States District Court for the
Middle District of Florida

---

**(September 5, 2002)**

Before CARNES, HILL and KRAVITCH, Circuit Judges.

PER CURIAM:

# I.

Jason Weisser and his wife, Susan, opened up a combination restaurant and gourmet food store on Bainbridge Island near Seattle, Washington in 1997. Weisser's mother and stepfather, Janet and Jack Malamud, had provided the collateral he needed to get loans to open up the business. When the Weissers began planning to open up a second store, this one in Kirkland, Washington, and needed more loans to do it, the Malamuds were willing to pledge more collateral. Specifically, the Malamuds agreed to a pledge a bond owned by a investment corporation of theirs, Pines Properties Inc. ("Pines"), as security for a "credit facility" to be granted by American Marine Bank ("Marine") to Eurowest Trading Company, LLC, ("Eurowest") the corporation Weisser had set up to run his restaurant business.[1]

On March 24, 1999, Pines pledged a New York bond with a face value of $1.25 million to Marine as collateral for an extension of credit to Eurowest. Pines' pledge was formalized by a pledge agreement, which was drafted by Marine and signed by the Malamuds on behalf of Pines ("the First Pledge Agreement").

---

[1]The Weissers originally ran their business through a corporation called Europa West; around the time of the transactions at issue they set up a new corporation, Eurowest, to run and hold the assets of the business. That change in corporate form had no effect on any aspect of this case, and so this opinion refers to the Weissers' business as "Eurowest" throughout.

Malamuds and Pines were not informed of this additional extension of credit to

Eurowest; Weisser testified, however, that he informed his parents of the increase

in the limit and kept them continually apprised of the status of his business.

As time passed Eurowest needed still more loan money, but Marine refused

to provide any further extension of the credit facility without further collateral.

Weisser told Marine that Pines would pledge additional bonds as collateral for a

further extension.   On the strength of Weisser's promise, Marine agreed to

provide even more credit, and on August 20, 1999, Marine and Eurowest closed

on a new $2,000,000 loan (the August Loan).  No change in terms agreement

accompanied this loan; instead, the $ 2,000,000 got a new loan number, and a new

Notice of Final Agreement was drawn up and signed by Marine, Eurowest, and the

Weissers, who made themselves personally liable on the note.

Central to the dispute between Marine and Pines is whether or not the

August Loan paid off the March Loan and, if it did, whether that payment released

the New York Bond.  Marine says that "it did not intend that the $2,000,000 loan

pay off any previous loans."  The Bank's internal documents, however, indicate

that the March Loan was paid off and closed when the August Loan was made.

And the parties agree that, after the August Loan, Eurowest's debt to Marine was

$2,000,000, not $3,500,000 (the amount of the August Loan plus the amount of

keep Eurowest afloat.  Pines claims it was never informed by Weisser of the

business's troubles, of the initial defaults on the debt, or of the extension of the

lifesaver loan, until after Marine had declared a default.  It is undisputed that it

was not informed of these things by Marine.

After Marine declared Eurowest in default, it attempted to recover its loss

on Eurowest's debt by enforcing its security interest in the Pines bonds.  However,

$990,000 of the New York bond had already been partially redeemed in August

1999, and Pines refused to turn over to Marine the rest of the bond.  As for the

North Carolina and Detroit bonds, Pines had sold them on December 9, 1999, soon

after it was informed of Eurowest's default, without Marine's knowledge or

consent and thus in violation of the terms of the Second and Third Pledge

Agreements.

Instead of turning over the bonds, most of which it had already sold, Pines

sued Marine in Florida state court, alleging that Marine had fraudulently induced

the Malamuds to pledge the New York bond through oral misrepresentations that

Pines' potential liability on the pledge would be limited to $750,000.  Pines

sought, inter alia, a declaratory judgment that it had no obligation to Marine, and

damages for Marine's alleged fraud.  Marine removed the case to federal court

based on diversity jurisdiction: Marine is a Washington corporation and Pines is a

7

be decided by a jury; 3) granting summary judgment to Marine on Pines'

suretyship defenses; and 4) granting summary judgment to Marine on Pines'

defense of novation.[2]

We review the district court's decision to grant summary judgment de novo,

applying the same legal standards as the district court. Levinson v. Reliance

Standard Life Ins. Co., 245 F.3d 1321, 1325 (11th Cir. 2001). Summary judgment

is appropriate when when the pleadings, depositions and answers to

interrogatories, and admissions on file, together with the affidavits, if any, show

there is no genuine issue of material fact and that the moving party is entitled to

judgment as a matter of law. DeJulio v. Georgia, 290 F.3d 1291, 1294 (11th Cir.

2002) (internal quotation marks omitted).[3]


## A. FRAUDULENT INDUCEMENT

---

[2]      Pines also challenged the district court's grant of summary judgment to Marine on
Pines' defenses of estoppel, unclean hands, and set off. As to those defenses, after reviewing the
record and the briefs of the parties, we affirm without discussion. See 11th Cir. R. 36(b).

[3]Because this is a diversity case, choice of law could affect our analysis. The district
court proceeded on the premise that Washington and Florida law generally do not differ in ways
that are relevant to the issues in this case. The court therefore approached the issues in the case
by relying on authority from both jurisdictions, and discussing differences in the law of the two
states only on the few points where it felt those differences were material. Because neither party
has objected to this approach to choice of law, we adopt it in this opinion, and assume that
Florida and Washington law are materially identical except on those points where the district
court noted a relevant difference.

Malamud, however, testified that when Pines agreed to provide the New York

bond as collateral, it did so in reliance on Marine's statements that there would be

a $750,000 limitation.

The district court accepted Pines' proffered testimony as true, as it was

required to at the summary judgment stage, but decided that nonetheless as a

matter of law Pines could not show that Marine had fraudulently induced the

pledge. Specifically, the district court concluded that Pines could not prove its

reliance on Marine's misrepresentations was justifiable, which is an element of the

fraudulent inducement claim. See Samuels v. King Motor Co. of Fort Lauderdale,

782 So.2d 489, 497 (Fla. 4th DCA 2001) (justifiable reliance is an element of

fraudulent inducement); Petersen v. Turnbull, 412 P.2d 349, 351 (Wash. 1966)

(fraudulent inducement can only be shown by proving the elements of fraud);

Webster v. L. Romano Engineering Corp., 34 P.2d 428, 430 (Wash. 1934) ("right

to rely" is an element of fraud). According to the district court, when a

representation about the terms of an agreement is not made part of the final written

agreement between the parties, reliance on that misrepresentation is as a matter of

law unjustifiable. See Barnes v. Burger King Corp., 932 F.Supp. 1420, 1428

(S.D. Fla. 1996); Schubot v. McDonalds Corp., 757 F.Supp. 1351, 1356 (S.D. Fla.

1990); First Union Discount Brokerage Services, Inc. v. Milos, 744 F.Supp. 1145,

11

could not have escaped the notice of any reasonable person who read it.[5]

Therefore, reliance on that alleged oral term limiting the value of the pledge,

which was not included in the written agreement, was unjustifiable as a matter of

law.  Cf. PaineWebber, Inc. v. Bahr, 97 F.3d 1460 (9th Cir. 1996) (unpublished

decision) (concluding that it was unreasonable as a matter of Washington law for a

"sophisticated businessman" to rely on oral promises about the terms of an

agreement that "conflict with the plain language of the [written] agreement.");

Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1309

(11th Cir. 1998); Hillcrest Pacific Corp. v. Yamamura, 727 So.2d 1053, 1056 (Fla.

4th DCA 1999) ("Although Pacific alleges that the appellees misrepresented the

'price' of the Property, the price is clearly stated in the Agreement. . . .  A party

cannot recover in fraud for alleged oral misrepresentations that are adequately

covered or expressly contradicted in a later written contract.").[6]  Because Pines'

---

[5]Janet Malamud, at least, testified that she did not read the Pledge Agreement before
signing it.  (We do not know whether Jack Malamud read it, because he died before he could be
asked about that.)  Her failure to read the terms, of course, does not make her reliance any more
justifiable than if she had read them and unreasonably overlooked the omission of any limitation
on the pledge.  Cf. Peoples Nat'l Bank of Wash. v. Ostrander, 491 P.2d 1058, 1061 (Wash. App.
Ct. 1971) ("If people, having eyes, refuse to open them and look, and, having understanding,
refuse to exercise it, they must not complain, when they accept and act upon the representations
of other people, if their venture does not prove successful.  Written contracts would become too
unstable if courts were to annul them for representations of this kind.").

[6]We recognize that in Yamamura, as in some of the cases relied on by the district court,
the contract contained a merger clause explicitly stating that the contract was the final and
complete expression of the agreement of the parties.  We do not believe, however, that the
presence of the merger clause was essential to those decisions, and thus do not believe that the

13

F.3d 1345, 1350 (11th Cir. 1999).  Whether the contract is ambiguous is a question of law for the court. Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc., 140 F.3d 898, 905 (11th Cir. 1998) (applying Florida law).  If the court decides the language of the contract is unambiguous, the interpretation of the contract is a question of law to be decided by the court.  Maccaferri Gibbons v. Dynateria, Inc., 91 F.3d 1431, 1493 (11th Cir. 1996) (applying Florida law). If the contract is ambiguous, however, the question of what the parties intended by the contract is a question of fact.  Bivens Gardens, 140 F.3d at 905.  Summary judgment is inappropriate when "there is a genuine issue of material fact as to the interpretation that the parties gave the ambiguous contract provision." Hancock v. Brumer, Cohen, Logan, Kandell & Kaufman, 580 So.2d 782, 784 (Fla. 3d Dist. Ct. App. 1991).

The district court concluded that the term "credit facility" unambiguously meant "a mechanism contemplating future requests."  This was error.  The meaning of the term is not clear on the face of the document.  The dictionary defines "credit" as "the ability of a business or person to borrow money" and "facility" as "something that promotes the ease of any action or course of conduct." Black's Law Dictionary at 367, 591 (6th ed. 1990).[7]  The district court

---

[7]Pines argues, citing to non-binding authorities, that the district court should not have consulted the dictionary definitions at all. See Roosevelt University v. Oldham, 220 B.R. 607,

15

Thus, the term "credit facility" in the First Pledge Agreement is ambiguous. Given the ambiguity, what the parties intended by the term is a question of fact. <u>Bivens Gardens</u>, 140 F.2d at 905. Therefore, summary judgment for Marine on its breach of contract claim could only have been correct if the record evidence did not raise a genuine factual question about what the parties intended by the term "credit facility." But the record evidence did raise such a fact question. Marine introduced testimony from bank officers that it used the term "credit facility" in the First Pledge Agreement to indicate that Pines' pledge of the New York Bond would secure a series of future loans to Eurowest. Pines, however, introduced testimony by Michael Weisser, the Malamuds' other son, and Pines' agent during the negotiations leading up to the first pledge agreement, that during the negotiations the parties agreed that the bond pledge would be limited to the one loan that was about to be taken out by Weisser. Also, the loan documents for the March Loan, which were executed at the same time as the First Pledge Agreement, do not indicate that the March Loan was part of a larger credit facility or line of

_____

(1998) ("a credit facility is similar to a line of credit."). However that case, in addition to not being binding on this court, did not involve any issue about the meaning of the term "credit facility" in a contract. Two other cases cited by Marine, <u>In re Model Imperial, Inc.</u>, 250 B.R. 775, 780-81 (S.D. Fla. 2000), and <u>SEC v. Credit Bancorp, Ltd.</u>, 194 F.R.D. 457, 461 (S.D.N.Y. 2000), are even farther afield from the issue of the meaning of "credit facility." Beyond those three cases, Marine merely cites a number of authorities that establish that a line of credit can involve the extension of multiple loans to the borrower. While that proposition is true, it begs the real question, which is whether "credit facility" in the First Pledge Agreement means "line of credit," or something similar. The decisions Marine relies on do not show that it does.

17

summary judgment on Pines' suretyship defenses.  Pines contends that this was error.

Before addressing Pines' argument, we first note that there is a distinction between sureties and guarantors, although both sureties and guarantors assume liability for the debt of another. The main legal difference between a guarantor and a surety is that a guarantor's obligation is secondary and collateral to the primary debt obligation, while a surety is primarily and directly liable on the debt from the inception.  See AT&T Motors v. Roemelmeyer, 158 So.2d 567, 570 (Fla. 3d DCA 1964).[9]  Both guarantors and sureties, however, are entitled to "suretyship defenses," although the content of those defenses can vary depending on the status of the defendant.  So, Pines can assert suretyship defenses if it was either a guarantor or a surety.

If Pines is entitled to assert suretyship defenses in this case, it is as a guarantor, not as a surety.  Marine could only reach Pines' bonds if Eurowest defaulted, making Pines' obligation more like the collateral obligation of a guarantor than the direct obligation of a surety.  Further, the First Pledge Agreement names Pines as "Guarantor," and Marine's internal documents

---

[9]Pines, who argues strenuously in its initial brief that it was a surety, and then vigorously asserts in its reply brief that "[t]here is no doubt that Pines was a guarantor," seems to have overlooked this point.

Agreement. Therefore the Pledge Agreement is better evidence of what Pines and Marine intended, and it indicates that Pines was a guarantor. Further, under Washington law, which the district court confirmed was the applicable law, the use of "guarantor" in the agreement is practically dispositive that Pines was a guarantor. See Amick, 402 P.2d at 405-06.

The second point relied on by the district court was that Pines only pledged a bond and was not personally liable on Eurowest's debt. The district court emphasized that if the value of the bond went down, Marine would be stuck with the bond value and could not look to Pines directly for payment. Therefore, the court concluded, Pines was not a guarantor. A Washington Supreme Court decision on suretyship seems to support the district court's view. In analyzing a fact situation similar to the one in this case, the Washington Supreme Court concluded that a pledgor of collateral was not a surety because he was not himself liable on the debt:

> Mr. Carter [the purported surety] did not promise to pay Mr. Helphrey [the lender] any of the loans or advances he had made or might make to the corporation [the borrower]. . . . All Mr. Carter did was to deposit his stock with Mr. Helphrey as a pledge to secure money loaned to the corporation. If either Mr. Carter or the corporation elected to pay the loans, then the pledge would be released, but Mr. Helphrey could not elect to waive his security and sue Mr. Carter for the indebtedness created by the money loaned. He could sue the corporation, but not Mr. Carter. His only remedy, so far as Mr. Carter

21

(applying Florida law) ("We regard one who pledges property to secure the obligation of another as being pro tanto a surety for that obligation, and that they sustain the relation to each other of principal and surety."); <u>Gellis v. S. Gellis & Co.</u> (Del Ch. 1974) ("Ordinarily, once an owner of property pledges it as security for the debt of another he is treated as occupying the position of a surety."); <u>Eichler v. Hillside Natl' Bank</u>, 176 A.2d 508, 511 (N.J. App. 1961) ("Where a pledge is made as security for the obligation of a third party, the pledgor is a surety to the extent of the pledged chattel." (quoting <u>Restatement of the Law, Security</u>, § 36)).

We believe that <u>Thompson</u> is the applicable precedent because it is closer to this case. <u>Thompson</u> specifically considered whether a pledgor may assert the suretyship defense that a change in the terms of the primary obligation had released the pledged collateral, which is the same defense Pines presses here. <u>Carter</u>, in contrast, considered a different issue, which was whether a pledgor was a surety for the purposes of a Washington statute which allowed the surety to require the lender to sue the debtor first, and discharged the surety if the lender did not bring that suit within a reasonable time. See <u>Carter</u>, 147 P.2d at 281 ("We therefore think that the contract did not make Mr. Carter a surety <u>as contemplated by the above-quoted</u>

23

to foreclose on the collateral. As pledgor of the bonds, Pines was entitled to

assert the suretyship defenses available to a guarantor.

Those suretyship defenses were, specifically, that Pines' pledge was

discharged by 1) Marine's increasing the amount loaned to Eurowest

without notice to or agreement from Pines, or 2) Marine's failure to require

Eurowest to provide it with financial statements and to inform Pines of

Eurowest's initial default, because each of these occurrences increased the

risk of the loan.

As to the first defense–Pines' claim that it was released when Marine

increased the amount of the March Loan–that defense would not be

available to Pines if its guarantee of Eurowest's debt had been a continuing

guaranty.  A continuing guaranty is established when a guaranty is intended

to cover a series of transactions or a succession of credits, or if its purpose is

to give the debtor a standing line of credit.  <u>Fidelity Nat'l Bank of South

Miami v. Melo</u>, 366 So.2d 1218 (Fla. 3d DCA 1987) (holding that a

continuing guaranty was established when "by its terms it clearly

contemplated a future course of dealing during an indefinite period, and was

intended to cover a series or succession of credits and loans.").  Thus, if

Pines was continuing guarantor for a succession of loans to Eurowest, it

25

granting summary judgment to Marine on Pines' suretyship defense that it was released by the change in the terms of the March Loan.

As to Pines' second defense– that it was released by Marine's failure to make Eurowest provide financial statements, and to notify Pines of Eurowest's default– it is not entitled to that defense if it was an absolute, or unconditional, guarantor of Eurowest's debt. <u>Century 21 Prods. v. Glacier Sales</u>, 918 P.2d 168, 171 (Wash. 1996) ("While impairment of collateral generally releases a guarantor from its obligations under a guaranty agreement, this rule does not apply where the guaranty is unconditional."); <u>Grayson v. Platis</u>, 978 P.2d 1105, 1109 (Wash. App. 1999) ("though a loan may be inefficiently managed and with adverse consequences, neither inferior lienors nor absolute guarantors have any recourse against the lender unless it is alleged and proved that the lender acted in bad faith.").[12]  A guaranty is unconditional unless the contract of guaranty expressly provides that it is not. <u>See id.</u> That is, unconditional guaranty is the default rule. In this case, the First Pledge Agreement placed no condition on Pines' guaranty of Eurowest's debt. Therefore, by default, Pines was an absolute guarantor as a matter of law, and not allowed to assert as a defense that

---

[12]     The district court appears to have conflated the concepts of continuing and absolute guaranty, but they are not the same thing.

27

County v. State, 199 So. 760, 761 (Fla. 1941); Nat'l Bank of Commerce of

Seattle v. Green, 463 P.2d 187, 191 (Wash. App. 1969).  There can be no

novation absent explicit language in the new agreement showing the parties'

intent to novate the first agreement.  United States v. Nill, 518 F.2d 793

(11th Cir. 1975 ) (applying Florida law) (a "clear agreement or manifestation

of intention of both parties to that effect is essential" to establishing

novation (emphasis in original)); see also Northwest Acceptance Corp. v.

Heinicke Instruments Co., 441 F.2d 887, 891 (5th Cir. 1971) (applying

Florida law).

In this case, there was no specific agreement between Marine and

Eurowest that the August Loan would extinguish the March Loan.  Pines'

only evidence that the August Loan paid off the March Loan is taken from

Marine's internal documents.  The August Loan itself does not indicate any

intent on the part of Marine and Eurowest to extinguish the March Loan

with the August Loan.  Therefore there was no novation of the March Loan,

and the district court was correct to grant summary judgment to Marine on

Pines' novation defense.

**EXHIBIT B**



**STEEL■**

**HECTOR**

**■DAVIS**

INTERNATIONAL℠

Steel Hector & Davis LLP
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
561.650.7200
561.655.1509 Fax
www.steelhector.com

Joseph G. Galardi
561.650.7202
jgalardi@steelhector.com

March 2, 2004

*Via Facsimile and Mail*

Daniel Blonsky, Esq.
Aragon, Burlington, Weil & Crockett, P.A.
2699 S. Bayshore Drive, Penthouse
Miami, FL 33133

Re:  *Pines Properties, Inc. v. American Marine Bank*
 Case No. 02-12016-GG

Dear Dan:

Enclosed is a proposed Final Judgment along with a cover letter I intend to send to the Court. The principal amount of the judgment is based on the amount previously awarded on summary judgment and stipulated to by the parties at trial. Prejudgment interest is calculated based on Washington State's 12% interest rate as applied by the Court on summary judgment.

Please contact me with any objections to the Final Judgment or cover letter by the close of business Thursday, March 4, 2003. If I do not hear from you by then, I will assume you have no objection to the Final Judgment and cover letter, and I will submit both to the Court.

Sincerely,

Joseph G. Galardi

JGG/jh
Enclosure
cc:   Michael T. Kranz, Esq. (w/encl.) (via facsimile)

Steel Hector & Davis LLP
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
561.650.7200
561.655.1509 Fax
www.steelhector.com

Joseph G. Galardi
561.650.7202
jgalardi@steelhector.com

March 2, 2004

*Via Hand Delivery*

Hon. Kenneth L. Ryskamp
United States District Court
Southern District of Florida
701 Clematis Street
West Palm Beach, FL  33401

    Re:   *Pines Properties, Inc. v. American Marine Bank*
              Case No. 02-12016-GG

Dear Judge Ryskamp:

Enclosed please find a proposed Final Judgment for the Clerk's execution.  The principal sum of the judgment for $1,979,337.70 is based on the amount previously awarded on summary judgment and stipulated to the parties at trial.

I have left blank the total amount of prejudgment interest owed and the total amount of the judgment to account for the passage of time between today and the date that the Final Judgment is actually entered.  Please note that as of March 2, 2004, the amount of accrued prejudgment interest is $1,037,814.68, for a total award of $3,017,152.38 as of that date. Prejudgment interest should thereafter accrue at $650.74 per day (this is the amount used by the Court in its Final Summary Judgment).

Thank you for your assistance in this matter, and please do not hesitate to call me if you have any questions regarding the amount of the Final Judgment.

Respectfully submitted,

Joseph G. Galardi

JGG/jh
Enclosure
cc:    Michael T. Kranz, Esq. (w/encl.) (via facsimile)
       Daniel Blonsky, Esq. (w/encl.) (via facsimile)

WPB_1998 437851v1

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

### Case No. 00-8041-CIV-RYSKAMP/VITUNAC

PINES PROPERTIES, INC.,
a Florida corporation,

        Plaintiff/Counterdefendant,

vs.

AMERICAN MARINE BANK,
a Washington corporation,

        Defendant/Counterplaintiff.

_____/

DRAFT

## FINAL JUDGMENT

This action came on for trial before the Court and a jury, Honorable Kenneth L. Ryskamp, District Judge, presiding, and the issues having been duly tried and the jury having duly rendered its verdict,

It is ORDERED AND ADJUDGED:

1.     That the Defendant/Counterplaintiff American Marine Bank recover from the Plaintiff/Counterdefendant Pines Properties, Inc. in the principal sum of $1,979,737.70, plus prejudgment interest in the amount of $_____, for a total of $_____, with post-judgment interest thereon at the rate provided by 28 U.S.C. § 1961(a), and its costs in this action, for which let execution issue.

2.     That Plaintiff/Counterdefendant Pines Properties, Inc. shall recover nothing in this action.

3.     That the Court reserves jurisdiction to award costs to American Marine Bank and

to enter such further orders as are just and proper.

Dated at West Palm Beach, Florida, this ___ day of March, 2004.

DRAFT

_____
Clerk of the Court

Copies provided to:

Michael T. Kranz, Esq.
Joseph G. Galardi, Esq.
Rudolph F. Aragon, Esq.
Daniel F. Blonsky, Esq.
Denis Richard, Esq.

2

**EXHIBIT C**



**ARAGON · BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.**

OFFICE IN THE GROVE PENTHOUSE 2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: INFO@ABWLAW.COM  WWW.ABWLAW.COM

March 4, 2004

VIA FACSIMILE

Joseph G. Galardi, Esq.
Steel Hector & Davis, LLP
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198

     Re:    Pines Properties, Inc. v. American Marine Bank
           Case No. 00-8041-Civ-Ryskamp, Southern District of Florida

Dear Joe:

       I am in receipt of your March 2 letter, proposed Final Judgment, and draft letter to Judge Ryskamp. I do not have the stipulated figures as to the principal amount at my fingertips, but if the recited figure is the stipulated amount, I have no objection to it being included in the Final Judgment, with the understanding that we do not agree with the judge's decision to remove the second and third pledge agreements from jury consideration and reserve the right to challenge that decision on appeal.

       We disagree with your use of Washington's prejudgment interest rate. It is our position that Florida's choice of law principles compel the application of Florida's prejudgment interest rate. If you do not agree, I think that the proper course of action is to file a motion for entry of final judgment so that the Court can rule on the matter.

       Finally, after the jury verdict, I raised the issue of using the pledged funds as part of the supersedeas bond and the Court asked that we try to reach an agreement. I see no reason for you to object since the funds would be fully secured and, if they are inadequate, additional funds will be posted. We would like to submit an agreed motion to the Court. Please advise if that is acceptable.

       Thank you for your attention to these matters.

                          Sincerely,

                          Daniel Blonsky

DFB:gr
cc: Michael T. Kranz, Esq.
     Rudolph F. Aragon, Esq.

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 00-8041-CIV-RYSKAMP/VITUNAC

PINES PROPERTIES, INC.,
a Florida corporation,

        Plaintiff/Counterdefendant,

    vs.

AMERICAN MARINE BANK,
a Washington corporation,

        Defendant/Counterplaintiff.

_____/

## FINAL JUDGMENT

This action came on for trial before the Court and a jury, Honorable Kenneth L.

Ryskamp, District Judge, presiding, and the issues having been duly tried and the jury having

duly rendered its verdict,

It is ORDERED AND ADJUDGED:

1.    That the Defendant/Counterplaintiff American Marine Bank recover from the

Plaintiff/Counterdefendant Pines Properties, Inc. in the principal sum of $1,979,737.70, plus

prejudgment interest in the amount of $_____, for a total of $_____ , with

post-judgment interest thereon at the rate provided by 28 U.S.C. § 1961(a), and its costs in this

action, for which let execution issue.

2.    That Plaintiff/Counterdefendant Pines Properties, Inc. shall recover nothing in this

action.

3.     That the Court reserves jurisdiction to award costs to American Marine Bank and to enter such further orders as are just and proper.

Dated at West Palm Beach, Florida, this ___ day of March, 2004.


 

 

_____

Clerk of the Court

Copies provided to:

Michael T. Kranz, Esq.
Joseph G. Galardi, Esq.
Rudolph F. Aragon, Esq.
Daniel F. Blonsky, Esq.
Denis Richard, Esq.